IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | Case No. | 3:15CR103 |
| Plaintiff | | |
| v. | ORDER | |
| Jason J. Keating, | | |
| Defendant | | |

In this criminal case, defendant Jason J. Keating pled guilty to charges of mail fraud, wire fraud, and conspiracy to commit those crimes. I sentenced him to 108 months' imprisonment.

Pending is Keating's motion to vacate under 28 U.S.C. § 2255. He asks me to "vacate his plea and sentence" as procured by ineffective assistance of counsel. (Doc. 121 at 10, 13).

For the reasons that follow, I deny the motion.

**Background**

The government charged Keating after discovering his sham mortgage relief company, Making Homes Affordable USA (MHAUSA). (Doc. 65 (Final Presentence Report (PSR)) at 6-7). He and codefendant Christopher Howder led the organization and employed others, whom the government charged as coconspirators. (*Id.*).

MHAUSA offered financially distressed homeowners a "Homesaver Program." (*Id.* at 7). Pursuant to the program, homeowners stopped paying their mortgages and gave MHAUSA reduced monthly payments, which, the company told its customers, MHAUSA held in "reserve" while it negotiated settlement with lenders. But MHAUSA never paid the lenders. (*Id.* at 8).

1

Instead, Keating and his coconspirators spent the reserve funds "for lavish personal expenses and to keep MHAUSA's fraudulent scheme running." (*Id.*).

The FBI investigated MHAUSA, resulting in Keating's indictment. (*See id.* at 11-12).

Keating pled guilty on May 31, 2016. (5/31/16 docket entry). There was no plea agreement. (Doc. 111 (Guilty Plea Tr.) at 2, ¶ 17). During an interview with a pretrial services/probation officer, Keating expressed his belief "that the guilty plea [he] made . . . was . . . an open plea agreement." (Doc. 65 at 40). Keating understood this to mean that he "would be able to present evidence and refute charges/allegations made by the prosecution[]" at sentencing. (*Id.*).

*Per* the federal sentencing guidelines, a defendant's offense level – and the corresponding recommended sentence range – increases according to the amount of loss a defendant causes. *See* United States Sentencing Commission, Federal Sentencing Guidelines Manual §2B1.1(b)(1). The following schedule applies to that calculation:

| | **Loss (Apply the Greatest)** | **Increase in Level** |
|---|---|---|
| (A) | $6,500 or less | no increase |
| (B) | More than $6,500 | add **2** |
| (C) | More than $15,000 | add **4** |
| (D) | More than $40,000 | add **6** |
| (E) | More than $95,000 | add **8** |
| (F) | More than $150,000 | add **10** |
| (G) | More than $250,000 | add **12** |
| (H) | More than $550,000 | add **14** |
| (I) | More than $1,500,000 | add **16** |
| (J) | More than $3,500,000 | add **18** |
| (K) | More than $9,500,000 | add **20** |
| (L) | More than $25,000,000 | add **22** |
| (M) | More than $65,000,000 | add **24** |
| (N) | More than $150,000,000 | add **26** |
| (O) | More than $250,000,000 | add **28** |
| (P) | More than $550,000,000 | add **30**. |

*Id.*

At the time of Keating's plea, the government had not yet determined the loss amount. (*See* Doc. 111 at 46, ¶¶ 22-25, 47, ¶¶ 1-7).

Before sentencing, the government proposed a stipulated loss amount of $1,255,816.24, which would have resulted in a fourteen-point offense-level increase. (*See* Doc. 125-1). Keating rejected the government's offer because he "thought the loss amount attributable to [his] conduct was less than that amount." (Doc. 115-1).[1]

Following Keating's rejection, the government calculated his loss amount at $1,842,894.87, attributable to 318 victims. (Doc. 65 at 40-41). Keating objected to that calculation, arguing "that the total amount of loss for this defendant is less than $1,500,000.00[.]" (*Id.* at 61).

At sentencing, I accepted the government's proposed loss amount, resulting in a sixteen-point offense-level increase. (Doc. 112 (Sentencing Tr.) at 4, ¶¶ 1-6; 26, ¶¶ 24-25). That increase, coupled with other factors, resulted in an offense level of twenty-six. Accordingly, Keating's guideline range was seventy to eighty-seven months. (*Id.* at 27, ¶¶ 8-21); *see also* Federal Sentencing Guidelines Manual §5.

---

[1] In his motion, Keating argued that "[c]ounsel was ineffective regarding plea negotiations and communicating with me and explaining to me the sentencing process and the proposed plea agreement." (Doc. 115 at 5). He claims that "[d]uring plea negotiations," the government expressed willingness to "enter into a plea agreement wherein the total loss attributable to [Keating's] conduct would be $1,255,816.24.[.]" (Doc. 115-1). But, as explained herein, the government offered to stipulate to the lower loss amount *after* Keating entered his guilty plea. (*See* Doc. 125-1 (email dated 11/30/16)).

This discrepancy prompted me to order the parties to submit supplemental briefs regarding whether Keating had ineffective assistance of counsel in preparing for sentencing (rather than during plea negotiations). (*See* 5/8/19 Docket Entry). The government filed its supplemental brief (Doc. 130). on June 3, 2019. Keating, despite having moved to extend the deadline to file his supplemental brief (*see* 7/11/19 docket entry), made no such filing.

Ultimately, I imposed a 108-month sentence, well above the guideline range. (Doc. 112 at 43, ¶¶ 7-8, 18). I determined that the circumstances surrounding Keating's wrongs "justif[ied] a very substantial upward variance from the guidelines." (*Id.* at 52, ¶¶ 1-4). Specifically,

- Keating directly victimized 268 people (and, taken in combination with his coconspirator's acts, 318 people), causing them to risk losing – and, in some cases, actually lose – their homes and used the victims' money for his gain (*id.* at 50, ¶¶ 15-25);

- Compared with Howder, Keating caused more harm and made a greater profit, victimizing 1/3 more people and making twice the amount of money as Howder (*id.* at 51, ¶¶ 1-7);

- After the FBI raided Keating's office, he continued to carry on the conspiracy for at least one month (*id.* at 51 , ¶¶ 6-11);

- Keating was "the defacto [sic] leader of th[e] operation." (*Id.* at 51, ¶ 16).

Keating appealed his sentence, and the Sixth Circuit affirmed. *See United States v. Howder*, 748 F. App'x 637, 648-51 (6th Cir. 2018).

**Analysis**

To obtain relief under 28 U.S.C. § 2255, the movant must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in the excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" "To prevail under section 2255, [Keating] must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). "A petitioner seeking to vacate a sentence pursuant to § 2255 has the burden of sustaining his contentions by a preponderance of the evidence." *McNeil v. United States*, 72 F. Supp. 2d 801, 804 (N.D. Ohio 1999) (Economus, J.) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)).

Keating argues that he had ineffective assistance of counsel. Specifically, he claims that trial counsel failed to explain that accepting the government's stipulation offer would result in a fourteen-point enhancement and offense level of twenty-five, lowering his guideline range to sixty-three to seventy-eight months. (*See* Doc. 115-1); Federal Sentencing Guidelines Manual § 5.

"To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable." *Sullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)) (additional internal citation omitted). "A reviewing court's scrutiny of counsel's performance is highly deferential." *Id.* (citing *Strickland*, *supra*, 466 U.S. at 689).

"[T]o prove that counsel's performance was prejudicial, there must be 'a reasonable probability that, but for counsel's unprofessional errors, the rest of the proceeding would have been different.'" *Davian v. United States*, 2015 WL 6758225, at *2 (N.D. Ohio) (Gaughan, C.J.) (quoting *Strickland*, *supra*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, *supra*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

**I. Keating's Guilty Plea**

In the guilty-plea context, "the first half of the *Strickland v. Washington* test" remains unchanged, but, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Keating cannot show such prejudice.

As explained in its response brief, the government did not offer to stipulate to the loss amount in exchange for Keating's guilty plea. (Doc. 125 at 9). Indeed, the government calculated the loss amount after Keating pled guilty but before sentencing. (See Doc. 125-1 (email dated 11/30/16)).

Accordingly, counsel's alleged deficiencies could not have impacted Keating's plea decision.

## II. Keating's Sentence

Keating likewise cannot show that counsel's alleged shortcomings prejudiced his sentence.

First, the record evidence shows that Keating likely would have rejected the government's stipulation offer even if counsel told him about its impact on the guideline range. Keating explicitly told his pretrial/probation services officer that he wanted an "open plea" to rebut the government's arguments and evidence at sentencing. And trial counsel fulfilled that desire by objecting to 1) the PSR's loss amount calculation and 2) the government's loss amount argument at sentencing.

Next, factors other than the loss amount affected Keating's sentence.

In *Winans v. United States*, 2017 WL 8315838, at *3 (6th Cir.), petitioner's ineffective assistance claim failed where the sentencing court considered both the loss amount and other Sentencing Reform Act (18 U.S.C. § 3553(a)) factors. The Sixth Circuit held that counsel's decision not to contest the loss amount did not prejudice petitioner because "[t]he district court did not choose a sentence based solely on the amount of losses that [defendant] caused." *Id.*

I likewise did not choose Keating's sentence based solely on the loss amount. Here, as in *Winans*, 2017 WL 8315838 at *3, I also considered § 3553(a) factors, including Keating's leadership role in the offense, the number of individuals he harmed (both directly and indirectly), and his continued disregard for the law after the FBI caught him. (*Id.* at 50-51).

Moreover, I found Keating's conduct more blameworthy than that of Howder, justifying punishment exceeding Howder's eighty-four month sentence, which is in the upper range of Keating's guideline recommendation. Therefore, even assuming Keating would have accepted the government's stipulation offer, the starting point for his sentence still would have exceeded the resulting lower guideline sentence.

Finally, Keating knew that neither a stipulation as to the loss amount nor the guideline recommendation would bind me at sentencing.

At a December 5, 2016 hearing, I advised the parties that

> I intend to ascertain the relevant conduct as to each and every Defendant, and we'll have the various enhancements in terms of victim impact among the loss applied appropriately. I don't care, quite candidly, if people reach a plea agreement where there's an agreement between the Government and the Defendant as to X dollars, X victims. This was a conspiracy, and if the victim impact statements particularly suggest that there are higher ranges of either victims or dollar loss attributable to Defendants, that will be my finding, unless you're able to persuade me that I can't do that.

(Doc. 107 at 68, ¶¶ 9-19).

I did just this during at sentencing: I heard argument from both sides about the number of victims and the amount of loss and determined "that the loss amount will be in excess of $1.5 million[,]" resulting in Keating's ultimate guideline recommendation. (Doc. 112 at 24-26). My December 5, 2016 remarks show that I would have followed this same procedure even if the parties had stipulated to a loss amount.

Next, at Keating's change-of-plea hearing, I ensured that he knew I could vary from the guideline recommendation:

> THE COURT: Okay. Do you understand that the guidelines are advisory? In other words, I'm not bound by the range? Whatever I determine, and I should mention, do you also understand that the final determination of the applicable guideline range, I will make that determination at sentencing after hearing – considering whatever evidence may be presented by the government and [trial counsel], and also whatever arguments each may make with regard to what the guideline range should be. Do you understand that part of the sentencing process?
>
> THE DEFENDANT: Yes, Your Honor.

(Doc. 111 at 20-21).

At sentencing, I determined that Keating's guideline recommendation was inadequate. I therefore did what I promised Keating I would do: I considered all the factors bearing on his culpability and crafted a commensurate sentence.

Keating's ineffective assistance claim therefore fails for want of prejudice.

## Conclusion

It is, therefore,

ORDERED THAT

Defendant Keating's motion to vacate under 28 U.S.C. § 2255 (Doc. 121) be, and the same hereby is, denied.

So ordered.

/s/James G. Carr
Sr. U.S. District Judge